UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| ESTER ADUT, | No. CV 12-02349-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in the

    assessment of Plaintiff's Mental Residual Functional Capacity (JS at 3);

2. Whether the ALJ erred in the credibility findings (JS at 17); and

3. Whether the ALJ erred in relying on the vocational expert's response to his incomplete hypothetical (JS at 24).

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ CORRECTLY ASSESSED PLAINTIFF'S**

**MENTAL RESIDUAL FUNCTIONAL CAPACITY**

After a hearing before the ALJ conducted on June 1, 2011 (AR 25-55), at which Plaintiff was represented by her current counsel, and testimony was taken both from Plaintiff and a vocational expert ("VE"), the ALJ found Plaintiff to be not disabled in a Decision dated June 8, 2011. (AR 11-19.)

The ALJ determined that Plaintiff has severe impairments of anxiety disorder and a depressive disorder (AR 13), but assessed that her mental residual functional capacity ("MRFC") allows her to perform a full range of work at all exertional levels but with non-exertional limitations of no work involving more than simple repetitive one to two step tasks; no work involving public contact; and no work involving more than occasional contact with peers. (AR 14.) Plaintiff disputes both the assessment and the MRFC conclusions.

Plaintiff has a high educational level, including a bachelor's

2

degree, a business degree, and a law degree. (AR 347.) She married in July 1989, gave birth to triplets, but her husband filed divorce papers in June 2002. (AR 348.) Beginning in July 2004, and continuing through at least January 2011, with some interruptions in treatment,[1] Plaintiff was under the care of treating psychiatrist Dr. Peyser. (AR 343-355, 369-372, 400-429.) Dr. Peyser diagnosed Plaintiff as having generalized anxiety disorder, panic disorder, recurrent major depression and cognitive disorder, and concluded that she is "genuinely disabled by her condition." (AR 354.)

The record also contains reports of consultative psychiatric examiner ("CE") Dr. Weems (AR 298-301) and Dr. Howard, a psychologist (AR 304-306).

Plaintiff contends that the ALJ improperly rejected the opinions of the treating psychiatrist and the consultative examiners. For the reasons to be set forth, the Court disagrees, and concludes, rather, that the ALJ properly incorporated and evaluated these opinions in setting forth Plaintiff's MRFC.

### A. **Applicable Law**.

In evaluating mental impairments, 20 C.F.R. §404.1520a(c)(3)(4) and §416.920a(c)(3)(4) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of

---

[1] These gaps in treatment can be fairly attributed to two factors which are identified in the record: first, Plaintiff moved from the Bay Area to live with her parents in the Los Angeles area; and, second, Plaintiff's financial condition, apparently due to her divorce and lack of employment, was at times precarious and either did not permit her to continue psychiatric treatment, or to afford various psychiatric medications.

decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[2]

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group

---

[2] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

4

homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF. The revised regulations identify five discrete categories for the first three of four relevant functional areas: activities of daily living; social functioning; concentration, persistence or pace; and episodes of decomposition. These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(3), (4).) In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(e)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

The Step Two and Three analyses (see Decision at AR 53-54) are intended to determine, first, whether a claimant has a severe mental impairment (Step Two), and if so, whether it meets or equals any of

the Listings (Step Three). It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

These findings and conclusions are relevant to the Step Two and Three analysis of whether a claimant has a severe mental impairment, and if so, whether it meets or equals any of the Listings. (See 20 C.F.R. Part 4, subpart p, App. 1.) The discussion in Listing 12.00, "Mental Disorders," is relevant:

> "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity. The functional limitations in paragraphs B and C must be the result of the mental disorders described in the diagnostic description, that is manifested by the medical findings in paragraph A.
>
> In Listing 12.00C, entitled 'Assessment of Severity,' it is stated that, 'we assess functional limitations using the four criteria in paragraph B of the Listings: Activities of daily living; social functioning; concentration; persistence, or pace; and episodes of decompensation. Where we use 'marked' as a standard for measuring the degree of limitation, it means more than moderate but less than extreme."

**B.    Analysis**.

On May 28, 2009, in apparent response to the Commissioner's decision to deny Plaintiff's application for disability benefits, Dr. Peyser wrote a 13-page latter to explain her mental status. (AR 343-354.)  In general, much of Dr. Peyser's discussion confirms that what Dr. Peyser viewed as a panic disorder and generalized anxiety disorder developed after Plaintiff's husband filed for divorce.  The record indicates that Dr. Peyser devoted a substantial amount of her therapeutic efforts over the years of her treatment of Plaintiff to developing a medication regimen which would control Plaintiff's panic disorder and other mental issues. (AR 349-354.)  Indeed, Dr. Peyser reported that, at times, Plaintiff's symptoms abated, to the point that Plaintiff would discontinue treatment, which was noted by the ALJ in his Decision. (AR 16.)  Further, according to Dr. Peyser, Plaintiff's neuropsychological testing was within normal limits and was consistent with a high level of intelligence. (AR 16, 353.)  There were no signs of organic mental disease. (AR 352.)

Plaintiff asserts that Dr. Peyser assessed that Plaintiff was disabled due to her depression and anxiety.  The Court notes, however, that Dr. Peyser did not make such an assessment; rather, Dr. Peyser seemed to believe that Plaintiff is intellectually overqualified for the types of work she can actually do.  Indeed, it is worth quoting from Dr. Peyser's report:

> "Ms. Adut has the bad luck of being entirely 'overqualified' for probably the only kinds of jobs she can actually perform at this point - quite structured and repetitive jobs utilizing conceptual skills but not relying heavily on memory or organizational skills - performed in a

     peaceful, non-stressful environment with considerable positive reinforcement."

(AR 346-347.)

As will be discussed <u>infra</u>, Dr. Peyser's evaluation that Plaintiff is capable of structured and repetitive work is not inconsistent with the ALJ's MRFC analysis.

While Dr. Peyser concluded that Plaintiff is "genuinely disabled" by her mental condition, it is clear that a finding of disability is a determination reserved to the Commissioner, not to medical professionals. The ALJ properly observed this (AR 16-17), and regulations explicitly support this proposition. (<u>See</u> 20 C.F.R. § 404.1527(e); Social Security Ruling ("SSR") 96-5p.)

While Plaintiff finds it to be not unusual that Dr. Peyser failed to make any assessment of Plaintiff's non-exertional capabilities in any kind of structured way, the fact is that Dr. Peyser treated Plaintiff for a period of seven years, and the ALJ was tasked with utilizing medical source opinions such as Dr. Peyser's to analyze Plaintiff's MRFC. Dr. Peyser's assessment that Plaintiff suffered what appears to be a situationally related level of panic disorder and stress does not equate to a finding of disability. Indeed, as the Court has noted by quoting Dr. Peyser's own report, this psychiatrist concluded that Plaintiff is capable of some type of work. The debate as to whether Dr. Peyser functioned more as an advocate for Plaintiff than as an objective medical professional is beside the point. Dr. Peyser is obviously a very caring professional, even going to extreme lengths to research whether certain medications might be available from Canada at lesser cost to Plaintiff. Whether that level of caring

and concern turned into advocacy would be a somewhat speculative conclusion, and is not necessary to this discussion. Dr. Peyser's conclusions are subject to evaluation in formulating an answer to the question of whether Plaintiff is mentally disabled.

Plaintiff also relies upon the opinions of the two CEs, Dr. Weems and Dr. Howard. Again, the Court's review of these reports does not support a finding of disability. In particular, Dr. Howard's report contains ample discussion of Plaintiff's mental status which does not jibe with the conclusion of Plaintiff's counsel that she is unable to function even in jobs which require minimal levels of reasoning, organization, and memory. It is worth quoting from relevant portions of Dr. Howard's Mental Status Exam:

> "[Plaintiff] arrived promptly for her evaluation, and verified her identity with a government issued photo identification card. She appeared her reported age. She was casually dressed. Her hygiene and grooming appeared adequate. There was no abnormal posture or gait, nor any abnormal tics, tremors, or mannerisms. She appeared alert, coherent, and oriented to person, place, time, and purpose of the evaluation. She appeared an adequate reporter. Once rapport was established, she was cooperative with the evaluation and required little encouragement. At least average language comprehension was indicated by her ability to follow test instructions with the necessity of repetitions."

(AR 305.)

Dr. Howard concluded that Plaintiff's ability as to attention and

concentration appeared impaired and that she would likely have moderate to marked difficulty performing detailed and complex tasks, moderate difficulty performing simple and repetitive tasks, difficulty accepting simple instructions from supervisors, and moderate difficulty dealing with the usual stresses encountered in competitive work. (AR 306.)

Accepting the conclusions of Dr. Howard, Plaintiff would not be incapable of performing the type of work assessed by the ALJ as within her mental RFC. Even moderate limitations in maintaining attention and concentration, performing activities within schedule, maintaining regular attendance, being punctual with customary tolerances, completing a normal workday and workweek without interruption based on psychologically based symptoms, and performing at a consistent pace do not constitute evidence of limitations which are considered per se disabling. See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

In formulating Plaintiff's MRFC, the ALJ took note of her activities of daily living ("ADL"), which included taking care of her children, driving them to and from school, performing household chores and running errands, making meals, shopping, and handling finances. (AR 17-18, 157-164, 254-261.) It is fair to conclude that Plaintiff's ability to perform such ADLs would be transferable to the requirements of doing the types of simple work tasks which the ALJ assessed as within Plaintiff's MRFC.

The Court thus concludes that the ALJ undertook a fair and reasonable interpretation of the record, and that his conclusions are supported by substantial evidence. For that reason, the Court finds no merit in Plaintiff's first issue.

**II**

**THE ALJ DID NOT ERR IN DETERMINING PLAINTIFF'S CREDIBILITY**

In Plaintiff's second issue, she contends that the ALJ erred in determining her credibility as to subjective symptoms and functional limitations.

The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements as to the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the MRFC determined in the Decision. (AR 16.)

It should be noted that the ALJ in fact gave substantial credibility to Plaintiff's assertions. While Plaintiff possesses both a bachelor's degree, a business graduate degree, and a law degree, the ALJ found that her mental state restricts her to performing simple, repetitive, one to two step tasks, and also that her communication abilities were sufficiently impaired due to her stress and frustration level, such that she should have no public contact and very little contact with coworkers. Ultimately, the ALJ determined that Plaintiff could perform only a level of rudimentary unskilled work.

Much of the Court's analysis as to this is already contained within its determination of the first issue. This would include the Court's evaluation of Plaintiff's mental health treatment over the years, and her daily activities, which frankly belie an inability to perform the type of rudimentary, simple work that the ALJ determined is within Plaintiff's MRFC. The Court will not second guess the ALJ's credibility finding, finding it to be supported by substantial evidence. See Thomas v. Barnhart, 278 F.3d 947, 958-959 (9th Cir. 2002).

# III

## **THE ALJ DID NOT ERR IN THE HYPOTHETICAL QUESTION**

## **TO THE VOCATIONAL EXPERT**

Plaintiff contends that the ALJ failed to properly incorporate the mental limitations assessed by the two CEs, Dr. Weems and Dr. Howard. The Court's conclusion is the opposite; that is, the ALJ did incorporate the relevant limitations which these two individuals assessed. The ALJ thus determined that Plaintiff had essentially moderate limitations in various work related functions, and incorporated these limitations into her MRFC. As previously noted, moderate limitations do not imply a per se inability to work. See Hoopai v. Astrue, supra.

The hypothetical questions which were posed by the ALJ to the VE properly reflected Plaintiff's MRFC, based on the medical evidence in the record. The ALJ was entitled to rely on the testimony provided by the VE in response to these hypotheticals. See Magallanes v. Bowen, 881 F.2d 747, 756-757 (9th Cir. 1989).

For the foregoing reasons, the Court finds no merit in Plaintiff's third issue.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: January 3, 2013            /s/
                                  VICTOR B. KENTON
                                  UNITED STATES MAGISTRATE JUDGE